**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

BRUNO QUISPE ROBERTS,

Petitioner,

v.

WARDEN GOLDEN STATE ANNEX, et al.,

Respondents.

No. 1:26-cv-07632-JLT-EPG

A-Number: 240-327-446

ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING RESPONDENTS TO PROVIDE A SUBSTANTIVE BOND HEARING

(Docs. 1, 5)

Before the Court is Bruno Quispe Roberts' request for a temporary restraining order (Doc. 5), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) For the foregoing reasons, the Court **GRANTS IN PART** the petition for writ of habeas corpus.

## I. BACKGROUND

Petitioner is from Peru. (Doc. 1 at ¶ 28.) Petitioner first entered the United States at an unknown place and unknown time before 2022. (*Id*. at ¶ 29.) During this period, he met his future wife and was charged with driving under the influence on two occasions.[1] (*Id*.) Petitioner then returned to Peru, where he experienced persecution on account of his faith and returned to

[1] It is unclear from the record as to when Petitioner first entered the United States prior to May 26, 2022. Respondents do not address this prior entry into the United States, nor do they address the two DUI incidents.

the United States again. (*Id.* at ¶ 30.) Petitioner last entered the United States without inspection on or about May 26, 2022, where he was encountered by U.S. Border Patrol near Otay Mesa, California. (*Id.* ¶ 28.) Petitioner was then released pursuant to a Form I-94 as an Alternate to Detention as a condition of parole. (Doc. 9-1 at 2.) On September 7, 2022, Petitioner reported to the Newark, New Jersey ICE office for completion of processing and issuance of a Notice to Appear. (*Id.*; *see also* Doc. 9-8.) Petitioner was then released on a Form I-220, Order of Recognizance subject to certain reporting requirements. (Doc. 9-3.) Following his May 2022 entry, Petitioner moved to New Jersey, where he established his home, married his wife, had two children, and worked to support his family. (Doc. 1 at ¶ 30.) In approximately May 2023, Petitioner timely filed an application for asylum. (*Id.*) That same month, Petitioner was apprehended by immigration authorities. (*See* Form I-200 Warrant for Arrest of Alien, Doc. 9-4; Form I-288 Notice of Custody Redetermination, Doc. 9-5.) Immigration authorities found he was not a flight risk nor danger to society, and Petitioner was ordered released on his own recognizance. (*See* Doc. 1-1.)

On August 22, 2026, Petitioner was arrested and charged with simple assault in violation of N.J.S.A. § 2C:12-1(a)(1) after a domestic dispute with his spouse and released from criminal custody. (Doc. 1 at ¶ 33; Doc. 9-1 at 2-3.) That same day, ICE received notice of Petitioner's arrest and issued an immigration detainer to local law enforcement. (Doc. 9-1 at 2-3.) Petitioner asserts that the incident arose from a confrontation with his wife after she experienced a relapsed in her alcoholism. (Doc. 1 at ¶ 34.) Petitioner asserts that his wife did not call law enforcement, did not wish to pursue charges against him, repeatedly contacted the prosecutor's office to request that the charges be dismissed, and was present at his September 10 and 17, 2026 hearings to request that the charges be dismissed. (Doc. 1 at ¶ 33.) On August 25, 2026, Petitioner attended an appointment with ICE Enforcement and Removal Operations ("ERO") in Newark, New Jersey, where he was arrested and taken into immigration custody. (*Id.* at ¶ 35; *see also* Form I-200 Warrant for Arrest of Alien, Doc. 9-6.) Almost a month after his arrest, Petitioner was provided with a notice of custody determination, and requested an IJ review his custody status. (*See* Form I-288 Notice of Custody Redetermination, Doc. 9-6.) Petitioner was

transferred to Golden State Annex Detention Facility in McFarland, California, where he remains. (Doc 1 at 1.)

On September 18, 2026, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing, *inter alia*, his arrest by immigration authorities without a constitutionally adequate pre-deprivation process violates his rights under the Due Process Clause of the Fifth Amendment. (Doc. 1 at 38-47.) On September 30, 2026, Respondents filed a response to the habeas petition, asserting Petitioner was detained pursuant to 8 U.S.C. § 1226(a) and was being scheduled for a bond hearing pursuant to his request for an IJ review his custody status. (*See generally,* Doc. 9.) Respondents argue that, to the extent Petitioner demands release from this Court without a bond hearing pursuant to 8 U.S.C. § 1226(a), Petitioner should be required to exhaust his administrative remedy before filing a habeas petition. (*Id*. at 3.) On October 7, 2026, Petitioner filed a reply. (Doc. 10 at 4.) On October 13, 2026, Petitioner informed the Court that after the matter here was fully briefed, prosecutors dismissed Petitioner's criminal charge and authorized the expedited expungement of the resulting proceedings. (Doc. 11 at 1; *see also* Ex. A, Expungement Order.) On October 15, 2026, the Court issued a Minute Order asking Respondents to provide an update as to whether a hearing was scheduled, the date of the scheduled hearing, and the outcome, if any, of such hearing. (Doc. 12.) On October 21, 2026, Respondents informed the Court that Petitioner's bond hearing was scheduled for September 30, 2026, but the motion for bond was withdrawn by Petitioner's attorney. (Doc. 13; *see also* Ex. 1 (IJ's Order).) The bond hearing was initially continued to October 2, 2026, but Petitioner's attorney again withdrew the request via motion filed with the immigration court. (*See* Ex. 2 (Motion to Withdraw Bond Request).)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 8.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review Petitioner's habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## III. DISCUSSION

### A. Exhaustion

In their opposition and status update, Respondents contend that because Petitioner has withdrawn two bond hearing requests and failed to request a new custody redetermination pursuant to 8 CFR § 1003.19, he failed to exhaust his administrative remedies before bringing this habeas action. (Doc. 9 at 3-4; Doc. 13 at 2.) In response, Petitioner argues that Respondents failed to justify why exhaustion is warranted under the principles of prudential exhaustion in light of the fact that he was initially subjected to mandatory detention and was not provided with an initial custody determination and the opportunity to request a bond hearing for almost a month after his arrest. (Doc. 10 at 5-7.)

Title 28 of the United States Code § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the

deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citations omitted).

Here, pursuit of the available administrative remedy—namely, a custody redetermination hearing before an IJ pursuant to 8 C.F.R. § 1236.1(d)(1) which places the burden of proof on the *noncitizen*—is inadequate and inefficacious. *See Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (explaining that at the custody redetermination hearing "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

This is because Petitioner was previously encountered and apprehended by immigration officials and subsequently released after an IJ determined he was not a significant danger or flight risk. (Doc. 1 at ¶ 28; Doc. 1-1; Doc. 9-1 at 2.) As such, he is entitled to a post-deprivation bond hearing where instead the *government* bears the burden of proof. *Pinchi v. Noem*, *et al.*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("Even assuming *arguendo* that the post-detention bond hearing provided under section 1226(a) provides constitutionally sufficient process for those noncitizens who have never previously been detained and released by DHS, Garro Pinchi's circumstance is different. Her release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger"); *see e.g.*, *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at *17–18 (E.D. Cal. Oct. 16, 2025) (explaining that an individual who has been paroled from immigration custody

after initial detention justifiably relies on the government's implied promise to allow them to live at liberty and their period of release heightens their liberty interest in remaining out of detention). As this court explained in *J.S.H.M.*, "[s]ince it is the government that initiated re-detention, it follows that the government should be required to bear the burden of proving a justification for the re-detention." *J.S.H.M*, 2025 WL 2938808, at *18. Thus, the Court waives the exhaustion requirement in this case.

**B. Detention Under 8 U.S.C. § 1226**

As Respondents concede, (Doc. 9 at 1–3), Petitioner's detention is controlled by 8 U.S.C. § 1226(a), as someone who was formally encountered and apprehended by immigration officials, and subsequently released on bond into the interior of the country by an IJ after conducting a danger and flight risk determination. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. July 30, 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Accordingly, Petitioner's re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

However, that is not the end of the inquiry. Though the criminal charges were ultimately dropped, this Court finds that Respondents may well have a legitimate interest in Petitioner's detention based on the nature and recency of Petitioner's encounter with law enforcement. "That Petitioner was not charged does not mean that the events did not occur, and the Immigration Judge may consider them in determining whether and under what conditions to set bond. It is for this reason that while release is often appropriate when the Government has failed to provide a pre-deprivation hearing, balancing the equities and the public interests in this case leads the

Court to conclude that it is sufficient to provide Petitioner a post-deprivation bond hearing ...” *Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *4 (E.D. Cal. Feb. 2, 2026); *see also Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025) (“If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight”); *See J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *15–16 (E.D. Cal. Oct. 16, 2025). Notably, a criminal conviction is not required before a releasee may be found to be in violation of the terms of his supervision. The Court finds that the appropriate remedy here is a post-deprivation bond hearing where the government bears the burden of proving that Petitioner poses a danger to the community or flight risk.

For the foregoing reasons, the Court **ORDERS:**

1. The petition for writ of habeas corpus, (Doc. 1), is **GRANTED IN PART** for the reasons stated in the orders cited above.

2. The motion for temporary restraining order, (Doc. 5), is **DENIED** as **MOOT**.

3. **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where “the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond,” *Id.* at 1203. In the event Petitioner is “determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,” the immigration judge should consider Petitioner’s financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

4. **At least 72 hours before** the scheduled hearing, Petitioner **SHALL** receive notice of the hearing. Petitioner **SHALL** have the right to be represented by counsel at the hearing, and she **SHALL** be entitled to appear at the hearing. If

her counsel has filed an appearance in the immigration proceedings, **at least 72 hours before** the hearing, counsel **SHALL** receive notice of the scheduled hearing.

5. Respondents **SHALL** provide a copy of this order to the immigration judge presiding over the bond hearing and **SHALL** arrange for the bond hearing to be recorded.

6. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California, with a copy of this Order.

7. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: November 3, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE